IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 20, 2002

## STATE OF TENNESSEE v. PHETSAMAY INTHAVONG

**Interlocutory Appeal from the Criminal Court for Wilson County**
**No. 00-1536     J. O. Bond, Judge**

-----

### No. M2001-03005-CCA-R9-CD - Filed March 19, 2003

-----

In this interlocutory appeal, the defendant challenges the trial court's upholding of the district attorney general's denial of her application for pretrial diversion. She argues that the district attorney general erred in not considering all required factors in the diversion denial and the trial court erred in taking testimony, upon which it relied in upholding the denial of diversion. Based upon our review, we reverse the order of the trial court denying pretrial diversion and remand for a reconsideration by the district attorney general of the defendant's diversion application.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

James G. King, Nashville, Tennessee, for the appellant, Phetsamay Inthavong.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Robert N. Hibbett and Jerry D. Hunt, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The nineteen-year-old defendant, Phetsamay Inthavong, was indicted on September 12, 2000, for arson, a Class C felony, for the August 19, 2000, burning of the home of her ex-boyfriend's mother and stepfather, Marilyn and Paul Kees. In her application for pretrial diversion, the defendant did not include a recitation of the facts of the alleged offense. The facts we glean from the record reveal that the defendant, knowing that the Kees were not at home, entered their house, set fire to a piece of paper, and threw it onto a bed, resulting in a total loss of the house and its

contents. Apparently, the defendant and Mrs. Kees's son had recently ended their relationship, and the defendant set fire to the Kees's home as an act of revenge.

The defendant submitted an application for pretrial diversion which bears the date of February 16, 2001. The application was denied by the district attorney general on March 30, 2001. The defendant then filed a petition for writ of certiorari on May 14, 2001, in conformity with Tennessee Code Annotated section 40-15-105(b)(3), for review of the denial of her application. A hearing was held on the petition on July 12, 2001, at which two of the victims, Mr. and Mrs. Kees, were permitted to testify.[1]

Mr. Kees testified that not only did the defendant set fire to their house, she also stole a laptop computer which belonged to his stepson's cousin who was a guest in their home at the time of the fire. He said that the defendant had broken into their house about a month before the fire but had returned everything she had taken. According to him, the fire was "actually the third time [the defendant] ha[d] vented her anger out toward [them] because of boyfriend girlfriend stuff." He said his house had been appraised for $101,000, and he had insurance coverage on the house for $96,000 and on the contents for $56,000. After the fire, he sold the lot on which his house was located because he could not afford to rebuild.

Mrs. Kees testified that the defendant had been dating her son for approximately two years and had been "like a part of the family." Regarding the fire, Mrs. Kees said that, from the defendant's confession,[2] it was obvious that the defendant "intended to do something" and that the defendant said she "waited until the fire got going real good" before leaving the house. Describing the defendant as "malicious and vindictive," Mrs. Kees said that although the defendant knew the family had a kitten in the house, she did not let the kitten outside before setting the house ablaze, causing the kitten to perish in the fire.

Following the hearing, the trial court determined that the district attorney general had not abused his discretion in denying the defendant's application:

> In what I've heard here this morning we have at least four people that had crimes committed against them. The visitor that was there lost what they had. There was a burglary involved, although it's not charged. It could be charged, still could be charged if they went to the grand jury and charged her with the burglary. That is a

---

[1]Evidentiary hearings on the petition for certiorari must be used "only to resolve any factual disputes raised by the prosecutor or the defendant concerning the application, but [the trial courts are] not to hear additional evidence that was not considered by the prosecutor." State v. Curry, 988 S.W.2d 153, 157-58 (Tenn. 1999). Here, the petition for certiorari did not identify any "disputed fact." Although at the hearing defense counsel stated that the defendant adamantly denied some of the facts which had been testified to by the victims, specifically, that she had broken into their home on a previous occasion, the defendant's petition for certiorari itself failed to justify the holding of a hearing.

[2]The defendant's alleged confession is not included in the record on appeal.

burglary, go in somebody's home and take something is a burglary. And then you have at least four people involved that were there or had things in that house burned up, completely destroyed the house evidently. When I first read it I thought it was a partial fire, but it wasn't. It's a lot of damage, a lot of damage. And of course the [defendant], I guess she's going to need a psychologist, she needs something. But all the times she's done it, she's taken things before, burglarized the house before according to these people. And the D.A., of course, they have to look at the whole background of this thing before you just up and say pretrial diversion. I try to help young people . . . [b]ut there are certain types of things that just can't really be helped. The D.A. has a responsibility to the community and for me to decide that they have failed to exercise that responsibility correctly and override what they've done, the record has to be pretty clear on that.

. . . .

These are the type things that just can't happen[] in a civilized society. We have to follow the rules. And the fact that she's not a US citizen[3] really doesn't, as far as I'm concerned, doesn't make any difference. She's still under the same rights that all of us here enjoys in this country. I don't know what [e]ffect this would have on her if she had a judgment against her. It could be far more reaching probably than we even know.

. . . .

She's lucky she doesn't have a string of charges against her over a period of time from what I've just heard here. She could have been indicted for all these things. Maybe not convicted but she could have been indicted. A series of crimes. And to burn a little cat up in the house, I mean the animal didn't do anything to anybody. And to mistreat an animal like that, knowing it was in there and not getting it out before you burned it. That bothers me too, because I like little cats, I like little animals.

I don't believe they have abused their discretion. . . . [The victims] have lost a lot. They have lost a lot more than could ever be

---

[3]At the hearing, defense counsel divulged that the defendant came to the United States from Laos with her parents when she was four years old. Although the defendant's parents have established U.S. citizenry, apparently the defendant never has.

replaced. When you lose everything in the fire, you may have saved some of the pictures, but there's things you don't save. There are memories that you lose, and these folks lost, I guess it was a good thing wasn't somebody in the house because it could have been aggravated. It could have been had somebody been in there, but it's not aggravated. It's a class C felony. I don't believe they have abused their discretion. I think someone who would do this in vengeance needs to have a public record made of it, so if it happens again you know where the tracks are. And people will be able to see what type person that person is.

So I'm going to overrule your motion. I think the D.A. has a right. You're allowed to appeal it though.

The defendant applied to and received permission of the trial court to appeal its order to this court.

## ANALYSIS

### Denial of Diversion

The defendant argues that the trial court erred in upholding the district attorney general's denial of her application in that the court considered testimony from the victims at the hearing regarding allegations that were not considered by the district attorney general and not mentioned in her application. The State responds that because the defendant chose to rely solely on her application at the hearing and because the facts of the crime were in dispute, the court heard from the victims, after which the court concluded that the prosecutor had not abused his discretion in denying diversion.

Initially, in our review, we note that the application for pretrial diversion provided only basic information about the defendant. As for her education, it stated that she had graduated from high school in 2000, attended college apparently for one month following her graduation, and was currently attending a community college. It appears that she had summer employment while in high school and had been working at a Sears store since her graduation from high school. She had been involved in several student organizations while in high school, holding leadership positions in at least two. On the portion of the application asking for the defendant's "recitation of the facts of the offense," she wrote, "I would recite the facts of this case with my attorney." She stated in the application that she could pay restitution of $400 per month. According to the application, a psychiatric or psychological evaluation had been conducted on the defendant, and she said she would

provide a copy, if requested, although she did not know if she had been diagnosed "with a particular problem."[4]

In his written response denying the defendant's application for pretrial diversion, the prosecutor listed five reasons for the denial: (1) the offense involved more than one victim; (2) the amount of damage to property sustained by the victims was particularly great; (3) the offense was committed to gratify the defendant's desire for revenge; (4) the victims are opposed to diversion; and (5) granting diversion will not deter this particular crime.[5] The denial explanation concludes by stating: "The above-enumerated factors certainly demand that this case be brought to trial."

Our legislature has provided that the decision to grant pretrial diversion should rest within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105; see also State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999) ("[W]hether to grant pretrial diversion to a qualified defendant who is statutorily eligible is a determination that lies in the discretion of the district attorney general."). While our legislature has defined a "qualified defendant" as one who meets statutory requirements set out in Tennessee Code Annotated section 40-15-105(a)(1)(B)(i) (Supp. 2001),[6] the courts have provided guidance to prosecutors in determining which defendants among those who pass the statutory requirements are then suitable for pretrial diversion. See Curry, 988 S.W.2d at 157 ("One who is statutorily eligible is not presumptively entitled to diversion."). The factors relevant to the prosecutor's determination focus on the defendant's "amenability to correction." Id. (quoting State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997)).

---

[4]The record on appeal contains an "Application for Certification of Eligibility for Diversion," apparently from the Tennessee Bureau of Investigation, of a certain named individual who was apparently applying for diversion. However, the person named is not the defendant, and this form does not appear to be relevant to this appeal.

[5]The prosecutor's amended response, filed nearly three months after the initial denial of diversion and a month and a half after the defendant had filed her petition for writ of certiorari, acknowledged that the defendant had no previous criminal record and had a good work, education, and social history. However, the prosecutor concluded that those factors did not outweigh the seriousness of the crime, "this Defendant and this crime must be deterred," and "the ends of justice cannot be served by diverting this case."

[6]According to this section, a "qualified defendant" must meet each of the following requirements:
> (a) The defendant has not previously been granted pretrial diversion under the provisions of this chapter or judicial diversion under the provisions of § 40-35-313;
> (b) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for such prior conviction; and
> (c) The offense for which the prosecution is being suspended is not a Class A or Class B felony or a Class C felony as defined in this subsection, a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

Our supreme court restated, in <u>State v. Bell</u>, 69 S.W.3d 171, 177 (Tenn. 2002), the State's responsibility when denying an application for pretrial diversion:

> In cases where the district attorney general denies an application for pretrial diversion, the denial must be written and must discuss all of the relevant factors considered and the weight accorded to each factor. <u>State v. Curry</u>, 988 S.W.2d at 157. That a defendant bears the burden of establishing suitability for diversion does not relieve the district attorney general of the obligation of examining all of the relevant factors and of setting out all of the required written findings. <u>Id.</u>; <u>see also</u> <u>State v. Pinkham</u>, 955 S.W.2d at 959. In addition, the denial statement must identify factual disputes between the evidence relied upon and the application filed by the defendant. <u>State v. Curry</u>, 988 S.W.2d at 157.

Here, the response of the district attorney general set out five reasons for denying pretrial diversion, which consisted of the facts of the crime, the defendant's motivation for the arson, the opposition of the victims, and the need for deterrence. Although the defendant's application was not supplemented with recommendations or similar material, the diversion denial did not acknowledge that the information set out in the application had been considered in determining that the defendant should not be granted diversion. While the district attorney general filed an amended response to the diversion denial after the defendant had sought certiorari, the amendment stating that additional factors had been considered, this second explanation appears to be an afterthought, intended for use at the certiorari hearing.

The limited function of a hearing on a petition for writ of certiorari was also explained in <u>Bell</u>, 69 S.W.3d at 177 (footnote omitted):

> If an application for pretrial diversion is denied, the defendant may appeal to the trial court for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3) (1997 & Supp. 2001). On review, the trial court must consider only the evidence considered by the district attorney general and must determine whether the district attorney general has abused his or her discretion. <u>See</u> <u>State v. Curry</u>, 988 S.W.2d at 158 (citation omitted). To determine whether there has been an abuse of discretion, the trial court must determine whether the district attorney general has considered all of the relevant factors and whether substantial evidence existed to support the denial of diversion. <u>Id.</u>; <u>see also</u> <u>State v. Hammersley</u>, 650 S.W.2d at 353. The trial court may conduct a hearing, but only to resolve any factual disputes raised by the district attorney general or the defendant. <u>State v. Curry</u>, 988 S.W.2d at 158. On appeal, the appellate court is bound by factual

findings made by the trial court unless the evidence preponderates against them.  Id.

The court further explained, in Bell, the limited review of the trial court in hearing a petition for certiorari following a denial of diversion:

> It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the district attorney general, not the trial court.  The trial court, in exercising its rather limited review pursuant to a petition for a writ of certiorari, may not re-weigh the evidence or substitute its view for that of the district attorney general.  See, e.g., Ben H. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem. St. L. Rev. 19, 20 (1973).  Instead, the trial court must only determine whether the district attorney general has abused his or her discretion by failing to consider and weigh all of the relevant factors or by reaching a decision that is not supported by substantial evidence.  State v. Curry, 988 S.W.2d at 158; see also State v. Hammersley, 650 S.W.2d at 355.  Indeed, a court cannot reasonably conclude that there is substantial evidence to support the district attorney general's decision if in fact the district attorney general has not first considered all of the relevant factors and their relative weight.

Id. at 179.

In denying pretrial diversion to the defendant, the district attorney general provided the following recitation of the facts:  "Evidence that the State would prove to the Court The [sic] Defendant, on August 19, 2000, did set fire to the home of her former boyfriends [sic] parents and caused extensive damage."  Based upon these facts, the State denied diversion because the crime "involved more than one victim"; the property damage was "particularly great"; the offense gratified the "defendant's desire for revenge"; the victims opposed the defendant's being placed on diversion; and the crime would not be deterred if the defendant were granted diversion.  As for identifying the disputed facts, the State's response stated that "[t]he Defendant has entered a plea of not guilty."

We respectfully disagree that the State satisfied its responsibility to consider and weigh all relevant factors.  No mention was made of the defendant's diversion application, other than as a trigger for the State's denial.  Likewise, we respectfully disagree that a defendant's plea of not guilty results in all facts of the offense then becoming disputed, so as to necessitate testimony of the victims at a subsequent hearing on the petition for writ of certiorari.  We conclude, further, that the State's amended diversion denial, filed after the defendant sought a writ of certiorari, was an attempt to comply with the State's responsibility to consider all factors relevant to a diversion application.  However, if, upon a defendant's filing a petition for writ of certiorari after a denial of diversion, the State could simply file an amended response to correct an earlier one which was inadequate, the

review process is subverted.  Under these circumstances, it is not surprising that the trial court was curious to learn the facts of the case, since the court had to review the State's fact-based denial of diversion, although there was no recitation of those facts upon which the State had relied.

## **CONCLUSION**

We reverse the order of the trial court and remand this matter to the district attorney general for reconsideration of the defendant's application for pretrial diversion.  In doing so, we are not suggesting what that determination should be.  If the defendant again is unsuccessful, she may file a petition for writ of certiorari seeking a review of the redetermination result.

_____
ALAN E. GLENN, JUDGE